## Triolo et al. v. Zoning Board of Adjustment

*D. G. Mazzola* and *Harry J. Dragonetti*, for plaintiffs.

*G. Coe Farrier*, assistant city solicitor, and *Frank F. Truscott*, city solicitor, for defendants.

LEVINTHAL, J., July 18, 1946.—This case comes before the court on an appeal from the decision of the zoning board of adjustment granting a use registration permit to carry on the business of an abattoir at premises 838-40 Carpenter Street, in the City of Philadelphia, the said premises being in a zoning district classified as "A Commercial". Upon a prior hearing before the board, the permit had been refused, since the operation of a slaughterhouse in the area was a nonconforming use. At a later hearing before the board the prior use of the premises as an abattoir was shown, whereupon a permit was granted. An appeal from this ruling

was taken on the ground that proper notice of the second hearing had not been afforded all of the parties concerned. We sustained petitioner and returned the record to the zoning board of adjustment with directions to hold another hearing on complying with the legal requirements as to notice. Pursuant to this order, a rehearing was held on May 7, 1946, all interested parties were present and, after testimony was taken, the board of adjustment authorized the variance. The board found as a fact on competent evidence that the premises in question had been used as an abattoir from late in the nineties to about 1915, and that the right to resume such nonconforming use was therefore established under section 4, subsection (4), of the Philadelphia zoning ordinance which provides as follows (Ordinances of the City of Philadelphia, 1933, p. 274):

"DISCONTINUED USE. A nonconforming use when discontinued may be resumed as the same class of use but cannot be resumed as a nonconforming use of a lower class."

Section 31(6) of the ordinance provides (p. 341):

"The said board of adjustment may, after public notice and public hearing, subject to appropriate conditions and safeguards, make special exceptions or variances in the terms of this ordinance in harmony with its general purposes and intent. . . ."

The power to authorize nonconformity uses is also authorized by the Act of May 6, 1929, P. L. 1551, sec. 8, 53 PS §3829, which provides:

"The board of adjustment shall have the following powers:

"3. To authorize, upon appeal, in specific cases, such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hard-

ship, and so that the spirit of the ordinance shall be observed and substantial justice done."

It is to be observed that on the first hearing in this case the board refused to issue a certificate of variance. Presumably, therefore, the board was not inclined to exercise its *discretionary* power to authorize a variance. It did so after the second and third hearings only by reason of its interpretation of section 4(4) of the ordinance as constituting a mandate to allow the resumption of a nonconforming use in any case where such use had once been made of the property, regardless of how long before the enactment of the ordinance it had been abandoned.

A decision of the board resting, in our view, on an improper interpretation of the ordinance, should not be permitted to stand when the reasonable inference to be derived from the entire record is that the use was permitted, not under the discretionary power conferred by the Act of 1929, but only because of the mandatory quality which it imputed to section 4(4) of the ordinance.

We cannot agree with the board's interpretation of the subsection in question. Ordinances, like statutes, are to be construed so as to effectuate the purposes sought to be accomplished thereby, as long as this can be done without distorting the plain meaning of words. Were the construction adopted by the board to be sustained, if a building had been devoted to a nonconforming use in the year 1800, and such use abandoned the following year, the board would be compelled to grant a certificate of variance in the year 1946 to any owner who desired to resume the nonconforming use abandoned almost a century and a half before. Such a construction would seriously impair the orderly development of the city, which is the general purpose of the zoning ordinance. See White's Appeal, 287 Pa.

259 (1926). An intention at variance with the general scheme of the ordinance is not to be imputed to city council unless clearly expressed.

In our view, the ordinance contemplates a discontinued use after the date of its enactment. In other words, the nonconforming use to which it refers is one that is in existence at the time of its passage. This does not mean that the use must be in actual operation at such time. It is sufficiently "existing" if discontinued at a prior date without the intention to abandon it. That this seems to have been the intention of city council seems clear on a consideration of other provisions in the ordinance. Section 2(17), under the heading "Definitions", provides (Ordinances of the City of Philadelphia, 1933, p. 372) :

"For the purpose of this ordinance, certain words and terms are defined as follows: . . .

"(17). Use. The use of land and/or of buildings shall be determined by existing usage and not by intended use."

The pertinent portions of section 4 are as follows (p. 274) :

"NONCONFORMING USE. . . .

"(2). Any building or the use of any building existing at the time of the passage of this ordinance that does not conform in use, height, location, size or bulk with the regulations of the district in which it is located, shall be considered a nonconforming building or use, and may continue such use in its present location, but shall be subject to the regulations covering nonconforming uses.

"Regulations for nonconforming use. . . .

"(4) DISCONTINUED USE. A nonconforming use when discontinued may be resumed as the same class of use, but cannot be resumed as a nonconforming use of a lower class."

It would seem to be clear that the discontinued use intended by section 4(4) is the existing use specified in section 4(2) and defined in section 2(17) of the ordinance. Our construction is in accord with that of our colleagues in the Court of Common Pleas No. 1 of Philadelphia County, wherein the same question was presented in Giunta et al. v. McLaughlin et al., 30 D. & C. 644 (1937). There the court said:

"The nonconforming use contemplated by the ordinance must be existing at the time of its passage, or, if then discontinued, the circumstances must permit the inference that there was an intention to resume such use at a later date."

The use of the premises as an abattoir was discontinued around 1915, and thereafter used as a stable and then as a garage. There cannot be much doubt, therefore, that the use of the building as a slaughterhouse had been discontinued, not temporarily or tentatively, but permanently and definitely, approximately 18 years before the passage of the ordinance, and hence, under our construction, was not a discontinued use within the meaning of section 4(4).

In Haller Baking Company's Appeal, 295 Pa. 257 (1928), the Supreme Court held that the intent of the Pittsburgh zoning ordinance was "to preserve the value of existing buildings without unnecessarily disturbing their *then* known use". (Italics supplied.) Counsel for the board has taken the position that the language of the Supreme Court is not pertinent in the instant case because the Pittsburgh ordinance explicitly provides that if a nonconforming use is discontinued, any further use must be in conformity with the provisions of the ordinance, whereas the Philadelphia ordinance provides that a discontinued nonconforming use may be resumed. We may agree that the Haller case does not preclude the construction which

the board places upon the Philadelphia ordinance, but it does not follow, as counsel for the board seems to think, that the case lends support to the board's construction of the ordinance here involved.

The Haller case may not be inconsistent with the board's position; on the other hand, it does not sustain it.

We do not decide whether, under the circumstances disclosed by the record, the board could properly exercise its discretionary power to grant a certificate of variance. We do decide that, since the certificate was evidently granted by reason of an erroneous interpretation of the ordinance, contestant's appeal is sustained, and the order of the board authorizing the variance and the issuance of a permit is reversed.

LEVINTHAL, J., December 5, 1946.—Exceptions have been filed to our adjudication in this matter. The first and second exceptions relate to our interpretation of section 4(4) of the zoning ordinance. We are still of the opinion that the "discontinued use" contemplated by the subsection is a use in existence at the time of the passage of the zoning ordinance. To adopt the construction for which the board contends would enable the use of much of the land in the city for farming and pasturage. A result so palpably incongruous ought not to be held by any court as having been intended by city council.

The third exception is to our conclusion that the use of the building as a slaughterhouse had been abandoned 18 years before the passage of the ordinance. The exception is predicated upon our alleged failure to give consideration to the fact that the building still has a few meager facilities usually found in an abattoir, which did not in any way impair its subsequent use, first as a stable and then as a garage. We have given this evidence the weight to which, in our judg-

ment, it is entitled, but our opinion remains unchanged: Under the overwhelming weight of the evidence the conclusion is irresistible that the use of the building as a slaughterhouse had been permanently discontinued and abandoned many years before the zoning ordinance was enacted.

The fourth exception appears to us to have substantial merit. Though we specifically refrained from deciding whether the board could properly exercise its discretionary power to grant a certificate of variance, we actually disposed of the matter by sustaining the appeal and reversing the order of the board. We did so on the assumption that the board originally had by implication already determined that in the exercise of its discretion no variance should be allowed. A careful examination of the record of the zoning board fails, however, to disclose a definitive decision on the basis of the board's discretionary power. The evidence of prior use of the premises as an abattoir, though insufficient in itself to compel the board to authorize a variance, is one of the factors which the board may or may not consider in determining whether in its discretion a variance should be allowed.

We are satisfied, therefore, that there is a measure of inconsistency between our decision and our final order. The board should have the opportunity of expressly authorizing or expressly refusing to authorize the issuance of the certificate under section 31 (6) of the ordinance and section 8 of the Act of May 6, 1929, P. L. 1551, 53 PS §3829, relating to the discretionary power to authorize variances.

The fourth exception to our adjudication is therefore sustained, and the court accordingly orders the case remanded to the zoning board of adjustment for further consideration and action in accordance with this opinion.